FILED
2021 Dec-07  PM 12:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **SANDRA SHEPPARD,** | ) | |
| | ) | **Civil Action No.** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **MERCEDES-BENZ U.S.** | ) | |
| **INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW, Sandra Sheppard, by and through undersigned counsel, and files this Complaint, and shows the Court as follows:

## JURISDICTION

1.　　This suit is authorized and instituted under the Age Discrimination in Employment Act, 29 U.S.C. § 621, 626(d)(1), et seq. (ADEA).

2.　　The plaintiff brings this action for injunctive relief and damages under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

3.　　This suit is authorized and instituted under 42 U.S.C. § 1981. (Section 1981).

## PARTIES

4.      Plaintiff, Sandra Sheppard, ("Plaintiff" or "Sheppard") is a resident of Childersburg, Talladega County, Alabama, and performed work for Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Western Division.

5.      At all times relevant to the allegations in this Complaint, Plaintiff was over the age of forty (40).

6.      Plaintiff is a person of African ancestry, colloquially referred to as Black.

7.      Plaintiff is a woman.

8.      Defendant Mercedes-Benz U.S. International ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

9.      Defendant employed at least 500 people during the current or preceding calendar year.

10.     Defendant's parent company, Daimler AG's, revenues exceeded 190 billion U.S. dollars in fiscal year 2020.

11.    Defendant may be served with process by delivering a copy of the summons and complaint to its registered agent.

## ADMINISTRATIVE PROCEDURES

12.    Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC) (Exhibit A).

13.    The EEOC issued a "Notice of Right to Sue" on September 8, 2021, entitling an action to be commenced within ninety (90) days of receipt of that notice (Exhibit B).

14.    This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

## FACTUAL ALLEGATIONS

15.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

16.    Defendant is now, and at all times relevant hereto, has been an employer engaged in an industry affecting commerce within the meaning of §701(b), (g), and (h) of Title VII and has employed more than the requisite number of persons for the requisite duration under Title VII.

17.    On or about November 14, 2004, Sheppard was hired by Defendant as a Team Member.

18.    Sheppard worked continuously for Defendant until Defendant terminated her employment on or about July 30, 2020.

19.    During her employment with Defendant, Sheppard was promoted twice, first to Team Leader and then to Group Leader, the position that she held at the time of her termination.

20.    Sheppard had no negative performance reviews.

21.    Sheppard had no recent written discipline at the time of her termination.

22.    Sheppard's team met every goal and benchmark for performance.

23.    Dwight Moore became Sheppard's manager when she was transferred to the Global Service Parts Warehouse in 2014.

24.    Defendant assigned Sheppard to the night shift.

25.    Sheppard increased productivity while working on the night shift.

26.    Even though her shift was smaller than the following shift, Sheppard produced more work than her counterpart on the following shift.

27.    As Sheppard excelled, Moore increased her team's workload.

28.    Each time Moore increased Sheppard's team's workload, she led the team to meet the challenge.

29.    Moore did not reward Sheppard for her productivity.

30.    Despite her positive performance reviews, Moore failed to rate Sheppard as ready to progress to the next level.

31.     Moore undermined Sheppard's efforts to discipline employees who were not performing, often reversing discipline she sought to impose.

32.     Moore did not intervene in discipline efforts of employees who were not Black women.

33.     Moore moved Sheppard from the night shift to the day shift because she allegedly thought she was better than him or knew more than him.

34.     On a separate occasion, Moore moved Sheppard's shift because she needed to get along with other Group Leaders.

35.     There was no conflict between Sheppard and other Group Leaders because they rarely interacted due to the shift schedules.

36.     At the end of 2019, Sheppard was selected for a special program for leaders who had demonstrated that they were ready to progress to the manager level.

37.     Moore encouraged other employees to seek the promotion.

38.     Moore refused to mark Sheppard as ready to progress, despite her meeting all the benchmarks.

39.     Moore informed Sheppard that she needed to improve skills but would not specify which skills needed improvement.

40.     In May 2019, another employee was insubordinate when she refused to perform a job as required under the rules.

41.     Insubordination is grounds for immediate termination.

42.     In response to the insubordination, Sheppard sent the employee home.

43.     The following morning, Moore told Sheppard that the insubordinate employee had called him crying and that he would have HR investigate her complaints.

44.     The insubordinate employee refused to work on several other occasions without being disciplined.

45.     On or about July 23, 2020, Sheppard learned that she had been accused of threatening team members and their jobs.

46.     Having done no such thing, Sheppard asked Defendant to investigate and interview her team members.

47.     Defendant refused to interview Sheppard's team members.

48.     In response to this incident, Sheppard spoke with Hugh Shadeed, Defendant's Human Resources Manager.

49.     Sheppard complained to Shadeed that her treatment was discriminatory.

50.     Sheppard told Shadeed that every Black woman who worked in a leadership capacity for Defendant had been fired.

51.     Shadeed told Sheppard that he did not think Defendant wanted to investigate anything.

52.     Defendant has a progressive discipline policy.

53.     Defendant asked Sheppard to sign a Performance Improvement Plan (PIP), which would have made it more difficult for her to move into the special program she had been selected for and impeded her progress toward the manager role.

54.     Sheppard declined to sign, as was her understanding of her rights under the disciplinary actions and evaluations policies.

55.     On or about July 27, 2020, Sheppard was again asked to sign the PIP.

56.     Sheppard signed the PIP, wrote a rebuttal, and informed Defendant that she wanted to appeal.

57.     After signing the PIP, Defendant suspended Sheppard for no new violations.

58.     On or about August 3, 2020, Defendant informed Sheppard that her employment had been terminated effective July 30, 2020.

59.     Sheppard received no progressive discipline.

60.     Defendant replaced her with a male.

61.     Other employees who are not Black could discipline their employees without being terminated, placed on a PIP, or suspended.

62.     Other younger employees could discipline their employees without being terminated, placed on a PIP, or suspended.

63.    Other male employees had complaints from their employees, and they were not placed on a PIP, terminated, or suspended.

64.    Other employees who were not Black women or who had not complained about disparities in discipline for Black women could appeal contemplated discipline and were not suspended or terminated.

## CLAIMS FOR RELIEF

## COUNT I – ADEA TERMINATION

65.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

66.    At all times relevant to the allegations in this Complaint, Plaintiff was over the age of forty (40).

67.    Defendant hired Plaintiff on or about November 15, 2004.

68.    Defendant terminated Plaintiff's employment on or about July 30, 2020.

69.    When Defendant terminated Plaintiff's employment, Plaintiff was over forty (40) years of age.

70.    Substantially younger employees engaged in the same or similar conduct but remained employed.

71.    Defendant's actions in terminating Plaintiff's employment while retaining substantially younger employees violated the ADEA.

72.    Because of Defendant's violation of the ADEA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT II – TITLE VII RACE DISCHARGE

73.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

74.    Plaintiff is a person of African ancestry, colloquially referred to as Black.

75.    Plaintiff was qualified for the position of Group Leader.

76.    Defendant terminated Plaintiff's employment on or about July 30, 2020.

77.    Other employees who are not Black engaged in the same or similar conduct but remained employed.

78.    Defendant's actions in terminating Plaintiff's employment violated Title VII.

79.    Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

80.    Plaintiff's race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

81.    Because of Defendant's discriminatory decision made in whole or in part because of Plaintiff's race, Plaintiff has lost pay and continues to be paid less.

## **COUNT III – TITLE VII RETALIATION**

82.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

83.    Plaintiff was qualified for her position and able to perform the essential functions of the job.

84.    On or about July 23, 2020, Plaintiff engaged in protected activity when she reported discrimination based on race.

85.    On or about July 30, 2020, Defendant terminated Plaintiff's employment.

86.    But for Plaintiff's protected activity, Defendant would not have terminated Plaintiff's employment.

87.    Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

88.    Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## **COUNT IV – TITLE VII SEX DISCHARGE**

89.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

90.    Plaintiff is a woman.

91.    Plaintiff was qualified for the Group Leader position.

10

92.     Defendant terminated Plaintiff's employment on or about July 30, 2020.

93.     Male employees engaged in the same or similar conduct but remained employed.

94.     Defendant's actions in terminating Plaintiff's employment violated Title VII.

95.     Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

96.     Plaintiff's sex was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

97.     Because of Defendant's discriminatory decision made in whole or in part because of Plaintiff's sex, Plaintiff has lost pay and continues to be paid less.

98.     Defendant's actions in terminating Plaintiff violated Title VII.

## COUNT V – TITLE VII RETALIATION

99.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

100.    Plaintiff was qualified for her position and able to perform the essential functions of the job.

101.    On or about July 23, 2020, Plaintiff engaged in protected activity when she reported discrimination based on sex.

102.   On or about July 30, 2020, Defendant terminated Plaintiff's employment.

103.   But for Plaintiff's protected activity, Defendant would have retained Plaintiff in her position as a Group Leader.

104.   Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

105.   Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT VI - 42 U. S. C. § 1981 DISCHARGE

106.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

107.   Plaintiff is a person of African ancestry, colloquially referred to as Black.

108.   Plaintiff was qualified for the position of Group Leader.

109.   On or about July 30, 2020, Defendant terminated Plaintiff's employment.

110.   Because of Defendant's discriminatory decision made in whole or in part because of Plaintiff's race, Plaintiff has lost pay and continues to be paid less.

111.   Defendant's decision to terminate Plaintiff's employment was made, in whole or part, because of her race in violation of 42 U. S. C. § 1981.

112.   Because of Defendant's violation of 42 U. S. C § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT VII – 42 U. S. C. § 1981 RETALIATION

113.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

114.   Plaintiff was qualified for her position and able to perform the essential functions of the job.

115.   On or about July 23, 2020, Plaintiff engaged in protected activity when she reported discrimination based on race.

116.   On or about July 30, 2020, Defendant terminated Plaintiff's employment.

117.   Plaintiff's protected activity was a motivating factor in Defendant's decision not to retain Plaintiff in her position as a Group Leader.

118.   Defendant violated 42 U. S. C. § 1981 by terminating Plaintiff in whole or in part for engaging in protected activity.

119.   Because of Defendant's violation of 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Age Discrimination in Employment Act;

B.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

C.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

D.      Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

E.      Award her back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

F.      Attorneys' fees and costs;

G.      Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

H.     Any different or additional relief as determined by the Court to which

Plaintiff is entitled.

*Amy Sillmon*

—————————————————————
Amy Sillmon
*Kira Fonteneau*
*Attorneys for Plaintiff*

**BARRETT & FARAHANY**
2 20th Street North, Suite 900
Birmingham, AL 35203
(205) 635-3366
amy@justiceatwork.com

## PLEASE SERVE DEFENDANT AS FOLLOWS

**Mercedes-Benz U.S. International**
**1 Mercedes Drive**
**Vance, AL 35490**

**Steven W. Nichols**
**1 Mercedes Drive**
**Vance, AL 35490**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **SANDRA SHEPPARD,** | ) | |
| | ) | **Civil Action No.** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **MERCEDES-BENZ U.S.** | ) | |
| **INTERNATIONAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | | |

# EXHIBIT A

Received by EEOC on 11/16/2020

EEOC Form 5 (11/09)

|  |  |
|---|---|
| **CHARGE OF DISCRIMINATION**<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:    Agency(ies) Charge No(s):<br><br>☐ FEPA<br>☐ EEOC      420-2021-00411 |

_____ and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Sandra Sheppard | (b) (7)(C) 1 line redacted | ████1965 |

| Street Address | City, State and ZIP Code |
|---|---|
| (b) (7)(C) 1 line redacted | Childersburg, AL 35044 |

**Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)***

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Mercedes-Benz US International | 500+ | (503) 745-8000 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1 Mercedez Drive | Vance, AL 35490 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code | |
|---|---|---|
|  |  |  |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest          Latest |
| ☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | 07/31/2020 |
| ☐ OTHER *(Specify)* | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1. I am a woman of African Ancestry.
2. I began working for the respondent on or about November 15, 2004, as a Team Member.
3. Since then, I have been promoted twice, first to Team Leader, and then to Group Leader, the position I held at the end of my employment.
4. I had no negative performance reviews.  My reviews routinely exceeded expectations.
5. I had no recent written discipline.
6. My team met every goal and benchmark for performance.
7. After I was transferred to the Global Service Parts Warehouse in 2014, my manager became Dwight Moore.
8. I was assigned to the night shift.
9. While on the night shift, I increased productivity.
10. My smaller shift routinely produced more work than my counterpart on the next shift.
11. After I excelled, Moore increased my team's workload.
12. Each time Moore increased my workload, I met the challenge.
13. Moore did not reward me for my productivity; instead, he looked for ways to sabotage my progress.
14. He would not rate me as ready to progress to the next level, even though all my performance reviews were good.
15. He would routinely interfere in my efforts to discipline employees who were not performing, often reversing discipline I sought to impose.
16. He did not intervene or reverse discipline when other employees who were not Black women sought to impose discipline.
17. Once, Moore moved my shift from nights to days because I allegedly "thought I was better than him" or "knew more than him."
18. On another occasion, he moved my shift because I needed to get along with the other Group Leaders.
19. I had little interaction with the other group leaders, there had been no conflict with them, and none disclosed any issues.

*Fonteneau Firm LLC – Lawyers for Working People*

20. I had few interactions with the other Group Leaders because I worked alone on the third shift, and the only time we would see each other was at shift change.

21. At the end of 2019, I was selected for a special program for leaders who had demonstrated that they were ready to go to the manager level.

22. After I was selected to move up, my manager tried to push my co-workers up to be promoted, but they could not pass the required assessments.

23. Moore never helped me pass assessments.  Instead, he discouraged me from moving up and even refused to mark me as ready to progress even though I had met all the benchmarks.

24. Moore told me I needed to work on skills but would never articulate what I needed to do and did not give me any information about what I lacked.

25. At the end of May, one employee was insubordinate when she refused to perform a job as required under the rules. Insubordination is grounds for immediate termination.

26. In response to the insubordination, I sent the employee home.

27. The next morning, I informed my manager, and he told me she had called him crying, and he would have HR investigate her complaints.

28. The employee continued to refuse to work on several other occasions, and she was not disciplined.

29. On or about July 23, 2020, I learned that I had been accused of threatening team members and their jobs for the first time.

30. I had done no such thing.  I asked the company to investigate, including interviewing my team members.

31. The company refused to interview the rest of the team, who could confirm that I had not engaged in improper conduct.

32. After the meeting, I asked to talk to Hugh Shadeed, who was the Human Resources Manager.

33. During the meeting with Shadeed, I complained that my treatment was discriminatory and told him that every Black woman who has worked in a leadership capacity had been fired.

34. Shadeed said he did not think the company wanted to investigate anything.

35. Mercedes Benz has a progressive discipline policy.

36. The managers wanted me to sign a PIP, which would have made it more difficult for me to move into the special program I had been selected for and impede my progress to the manager role, making me a peer to Moore.

37. I initially declined to sign, as was my right according to my understanding of our disciplinary actions and evaluations policies.

38. On July 27, 2020, I was called into yet another meeting where they asked me to sign the PIP.

39. This time, I agreed to sign, wrote a rebuttal, and told the managers I wanted to appeal, a right all employees also had, and one I had utilized in the past.

40. I signed the form to quell the situation.

41. After the meeting, I was suspended again, for no new violation.

42. On or about August 3, 2020, I was informed that I had been terminated effective July 30, 2020.

43. I received no progressive discipline.

44. A male replaced me.

45. Other employees who are not Black could discipline their employees without being terminated, placed on a performance improvement plan, or suspended.

46. Other younger employees could discipline their employees without being terminated or suspended, or placed on a performance improvement plan.

47. Other employees who are not Black had complaints from their employees, and they were not terminated, placed on a performance improvement plan, written up, or suspended.

48. Other male employees had complaints from their employees, and they were not placed on a performance improvement plan, terminated, written up, or suspended.

49. Other employees who were not black women or who had not complained about disparities in discipline for Black women could appeal contemplated discipline and were not suspended or terminated.

I believe that I was discriminated against based on race and retaliated against in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981.
I believe that I was discriminated against based on sex and retaliated against in violation of Title VII of the Civil Rights Act.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY–When necessary for State or Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 11/13/2020 _____ Date | *Sandra Sheppard* _____ Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **SANDRA SHEPPARD,** | ) | |
| | ) | **Civil Action No.** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **MERCEDES-BENZ U.S.** | ) | |
| **INTERNATIONAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | | |

# EXHIBIT B

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Sandra Sheppard<br>(b) (7)(C) 1 line redacted<br>Childersburg, AL 35044 | From: | Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street South<br>Birmingham, AL 35205 |
|---|---|---|---|

|  | *On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a))* |  |  |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2021-00411 | **MICHAEL G. ALBERT,**<br>**Investigator** | (205) 651-7043 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  |  |
|---|---|
|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| X | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*for   James E Love Sr*

September 8, 2021

Enclosures(s)

**BRADLEY A. ANDERSON,**
**District Director**

*(Date Issued)*

cc:   **MERCEDES BENZ**
**C/o Michael L. Lucas**
**Burr and Forman LLP**
**Suite 3400  Shipt Tower**
**420 North 20th Street**
**Birmingham, AL 35203**

**Kira Fonteneau**
**FIVE POINTS LAW**
**2151 Highland Ave South**
**Suite 205**
**Birmingham, AL 35205**